USCA1 Opinion

 

 September 10, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1227 DINHORA QUINTERO de QUINTERO, Plaintiff, Appellant, v. AWILDA APONTE-ROQUE, ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen Consuelo Cerezo, U.S. District Judge] ___________________ _________________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ _________________________ Luis F. Abreu Elias on brief for appellant. ___________________ Anabelle Rodriguez, Solicitor General, and Vannessa Ramirez, __________________ ________________ Assistant Solicitor General, Department of Justice, on brief for appellees. _________________________ _________________________ SELYA, Circuit Judge. This is an appeal from an order SELYA, Circuit Judge. _____________ of the United States District Court for the District of Puerto Rico granting summary judgment in the defendants' favor on qualified immunity grounds. Because the plaintiff has failed to show that the defendants' actions violated any clearly established right assured by federal constitutional or statutory law, we affirm. I. BACKGROUND I. BACKGROUND Plaintiff-appellant Dinhora Quintero de Quintero (Quintero), a citizen of Colombia, was hired on September 2, 1986 by the Department of Public Education (DPE) of the Commonwealth of Puerto Rico as a speech therapist. Ten days later, Quintero was unceremoniously cashiered. Her superiors justified the firing by reference to a local statute making United States (or Puerto Rico) citizenship an indispensable requirement for teacher qualification in the Commonwealth's public schools.1 In May of 1987, appellant sued. Invoking 42 U.S.C. 1983 (1988), she alleged discrimination on the basis of national origin in violation of the federal Constitution. Her complaint named as defendants three ranking DPE officials. Both sides moved for summary judgment. The district court issued a Pullman _______ stay in early 1989, see Railroad Comm'n v. Pullman Co., 312 U.S. ___ _______________ ___________ ____________________ 1The statute in question provides that all "[c]andidates to obtain a teacher's certificate" shall "be . . . citizen[s] of the United States of America or of Puerto Rico." P.R. Laws Ann. tit. 18, 264(1) (1989). It is undisputed that the position for which Quintero was hired requires certification. Moreover, Quintero does not contend that the position differs materially from other teaching positions in the public schools. 2 496 (1941), because an arguably related case was pending before the Puerto Rico Supreme Court. That case was decided on June 30, 1989. See Paz Lisk v. Aponte Roque, 89 JTS 69 (1989). After ___ ________ ____________ mulling the matter for a considerable period of time, the district court entered summary judgment in favor of the defendants. This appeal followed. II. THE SUMMARY JUDGMENT STANDARD II. THE SUMMARY JUDGMENT STANDARD Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial responsibility of suggesting the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 ______________ _______ (1986); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. _______ ________________ 1990). The opposing party "must then document some factual disagreement sufficient to deflect brevis disposition." Mesnick ______ _______ v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. __________________ _____ denied, 112 S. Ct. 2965 (1992). When, as in this case, the ______ material facts are undisputed, the question on a motion for summary judgment becomes one of law. Appellate review of the district court's ensuing decision is plenary. See id.; Garside, ___ ___ _______ 895 F.2d at 48. In appraising summary judgments, we are not limited to the district court's reasoning. Instead, the court of appeals 3 may "affirm the entry of summary judgment on any independently sufficient ground made manifest by the record." United States v. _____________ One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992). ___________________________ III. QUALIFIED IMMUNITY III. QUALIFIED IMMUNITY Government officials exercising discretionary authority are entitled to qualified immunity in respect to claims under section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 ______ __________ U.S. 800, 818 (1982). To be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Thus, ________ _________ the operative inquiry is not whether the defendants actually abridged the plaintiff's constitutional rights. The fact that a violation occurred is not enough to pierce the shield of qualified immunity "unless it is further demonstrated that [the defendants'] conduct was unreasonable under the applicable standard." Davis v. Scherer, 468 U.S. 183, 190 (1984); accord _____ _______ ______ Amsden v. Moran, 904 F.2d 748, 751 (1st Cir. 1990), cert. denied, ______ _____ _____ ______ 111 S. Ct. 713 (1991). In essence, then, the defense of qualified immunity offers sanctuary not only to government officials who act with impeccable propriety, but also to those who err but could not reasonably have understood that their actions infracted a prospective plaintiff's federally assured rights. See, e.g., ___ ____ 4 Amsden, 904 F.2d at 752; Brennan v. Hendrigan, 888 F.2d 189, 192 ______ _______ _________ (1st Cir. 1989); see also Collins v. Marina-Martinez, 894 F.2d ___ ____ _______ _______________ 474, 478 (1st Cir. 1990) (noting that "a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity"). Definitively, the touchstone of an inquiry into qualified immunity is whether the state actor's behavior was objectively reasonable, as a matter of federal law, at the time and under the circumstances then obtaining. See Amsden, 904 F.2d at 751. ___ ______ A court embarking on an inquiry into qualified immunity must invariably determine whether some right emanating from federal constitutional or statutory law was "clearly established" at the time of the alleged violation. See id. at 752. This ___ ___ examination sometimes calls into question whether the plaintiff has asserted a violation of a right at all. See Siegert v. ______ ___ _______ Gilley, 111 S. Ct. 1789, 1793 (1991); Morales v. Ramirez, 906 ______ _______ _______ F.2d 784, 787 (1st Cir. 1990). When a defendant moves for summary judgment on the basis of qualified immunity, it is the plaintiff's burden to demonstrate the infringement of a federally assured right. See Castro-Aponte v. Ligia-Rubero, 953 F.2d 1429, ___ _____________ ____________ 1430 (1st Cir. 1992). If she fails to do so, the movant prevails. Id. at 1431. ___ IV. ANALYSIS OF THE EQUAL PROTECTION CLAIM IV. ANALYSIS OF THE EQUAL PROTECTION CLAIM In the case at hand, appellant claims that, by terminating her employment solely on the basis of alienage, the defendants violated a clearly established right which should have 5 been apparent to reasonable school officials in September of 1986. She points to the federal Constitution's Equal Protection Clause as the principal source of the claimed right. Whatever one may think of the local statute in question, which is no longer in force, we believe appellant's view of the Equal Protection Clause has been largely discredited by Supreme Court case law that we are bound to respect. A. A. __ Although it has long been held that resident aliens fall within the purview of the Equal Protection Clause, see ___ Nyquist v. Mauclet, 432 U.S. 1, 7 (1977); Examining Bd. of Eng'rs _______ _______ _______________________ v. Flores de Otero, 426 U.S. 572, 602 (1976); Graham v. _________________ ______ Richardson, 403 U.S. 365, 371 (1971); Truax v. Raich, 239 U.S. __________ _____ _____ 33, 39 (1915); Yick Wo v. Hopkins, 118 U.S. 356, 369 (1886), the _______ _______ rule is not without its recognized exceptions. A State and Puerto Rico, for purposes of the exception discussed in this opinion, is to be treated at least as generously as a State can, "in an appropriately defined class of positions, require citizenship as a qualification for office" without departing from the constitutional restraints of the Equal Protection Clause. Sugarman v. Dougall, 413 U.S. 634, 647 (1973). States are ________ _______ permitted to define these classes so as "to preserve the basic conception of a political community." Dunn v. Blumstein, 405 ____ _________ U.S. 330, 344 (1972). Exempt classes may, therefore, include "persons holding state elective or important nonelective executive, legislative, and judicial positions, for officers who 6 participate directly in the formulation, execution, or review of broad public policy perform functions that go to the heart of representative government." Sugarman, 413 U.S. at 647. The key ________ is whether a plausible nexus exists between citizenship and the demands of a particular position in the public sector. Phrased another way, a State may justify its exclusion of aliens "by a showing of some rational relationship between the interest sought to be protected and the limiting classification." Foley v. _____ Connelie, 435 U.S. 291, 296 (1978). To find if this governmental ________ function exception applies in a given instance, a reviewing court must ask whether the "position in question . . . involves discretionary decisionmaking, or execution of policy, which substantially affects members of the political community." Id.; ___ accord Cabell v. Chavez-Salido, 454 U.S. 432, 440-41 (1982). ______ ______ _____________ B. B. __ In respect to teachers, the case of Ambach v. Norwick, ______ _______ 441 U.S. 68 (1979), provides luminous authority. There, the Court examined a New York law allowing exclusion of aliens from employment as public school teachers. In determining whether teaching in public schools constitutes a governmental function within the sweep of the Sugarman doctrine, the Court first ________ acknowledged the importance of public schools in our democracy: "'Today, education is perhaps the most important function of state and local governments. . . . It is the very foundation of good citizenship.'" Id. at 76 (quoting Brown v. Board of Educ., ___ _____ ______________ 347 U.S. 483, 493 (1954)). The Court then focused on the nature 7 of public education and the degree of responsibility thrust upon teachers in the due performance of their mission. See id. at 78- ___ ___ 80. Teachers, Justice Powell wrote, "play a critical part in developing students' attitude toward government and [their] understanding of the role of citizens in our society." Id. at ___ 78. He also observed that a teacher possesses wide discretion as to how course material is communicated to students; that he or she inevitably serves as a role model; and that, "through both the presentation of course materials and the example he [or she] sets, a teacher has an opportunity to influence the attitudes of students toward government, the political process, and a citizen's social responsibilities." Id. at 79. ___ On this basis, the court concluded that public school teachers, as a class, come within the governmental function exception and, therefore, "the Constitution requires only that a citizenship requirement applicable to teaching in public schools bear a rational relationship to a legitimate state interest." Id. at 80. The Court concluded that the New York statute was ___ narrowly tailored to serve its purpose because it excluded only those aliens who refused to obtain United States citizenship. Id. at 80-81. ___ C. C. __ In light of Ambach, we think that, in September of ______ 1986, it did not violate any clearly established federal constitutional right for an education official to terminate a teacher's employment in conformity with a statute barring aliens 8 from holding teaching positions. While it is at least arguable that the Puerto Rico statute has a somewhat broader reach than its New York counterpart, approved in Ambach,2 the Court has not ______ hesitated to uphold statutes that barred aliens totally from _______ serving in certain government positions. See, e.g., Cabell, 454 ___ ____ ______ U.S. at 441-42 (deputy probation officers); Foley, 435 U.S. at _____ 299-300 (state troopers); see also Cervantes v. Guerra, 651 F.2d ___ ____ _________ ______ 974, 981-82 (5th Cir. 1981) (holding that a community action agency's bylaws excluding aliens from service on the board of directors did not deny equal protection); cf. Campos v. FCC, 650 ___ ______ ___ F.2d 890, 893-94 (7th Cir. 1981) (holding that a statute prohibiting the Federal Communications Commission from granting commercial radio operators' licenses to aliens did not violate the Fifth Amendment's Due Process Clause). Moreover, the Ambach ______ Court itself suggested that a State may exclude from its political functions "all persons who have not become part of the ___ process of self-government." Ambach, 441 U.S. at 74 (emphasis ______ supplied). We conclude, therefore, that the defendants were entitled to qualified immunity as a matter of law. V. MISCELLANEOUS ARGUMENTS V. MISCELLANEOUS ARGUMENTS We pause briefly to address two other contentions advanced by the appellant. First, Quintero asseverates that her discharge was actionable under 42 U.S.C. 1983 because it ____________________ 2Whereas aliens not yet eligible for citizenship were exempt from the New York statute considered by the Ambach Court, see 441 ______ ___ U.S. at 70, Puerto Rico's statute prohibits all aliens from ___ obtaining certification. See P.R. Laws Ann. tit. 18, 264(1). ___ 9 transgressed the Puerto Rico Constitution and, thus, transgressed federal law. We disagree. The notion that the Puerto Rico Constitution should be considered a federal law for this purpose flies in the teeth of this court's earlier opinions. See, e.g., ___ ____ United States v. Quinones, 758 F.2d 40, 42-43 (1st Cir. 1985). ______________ ________ By the same token, the fact that the Puerto Rico Constitution itself prohibits discrimination on the basis of alienage does not assist appellant. A federal court may not order state officials to conform their behavior to state law. Pennhurst State School _______________________ and Hospital v. Halderman, 465 U.S. 89, 106 (1984). To the ____________ _________ extent that appellant seeks relief based on Puerto Rico law, her remedy, if any, lies in the courts of the Commonwealth. Appellant's last argument questions whether the district court erred in abstaining under Pullman. That issue, _______ however, is moot. Whether or not error inhered a subject on which we take no view there is no effective relief that we now can provide. Courts are without jurisdiction to address academic questions.3 See In re Stadium Management Corp., 895 F.2d 845, ___ _______________________________ 848 (1st Cir. 1990) (dismissing appeals as moot because court ____________________ 3We note in passing that the district court's decision to abstain was quite possibly an appealable event, see, e.g., Moses ___ ____ _____ H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 8-13 ______________________ _____________________ (1983) (concluding that, on particular facts, a district court's Pullman stay order was appealable); Idlewild Liquor Corp. v. _______ ______________________ Epstein, 370 U.S. 713, 715 n.2 (1962) (per curiam) (order of _______ district court staying proceedings, premised on Pullman _______ abstention, held to be immediately appealable); Bridge Constr. _______________ Corp. v. City of Berlin, 705 F.2d 582, 583 (1st Cir. 1983) _____ ________________ (discussing the appealability issue in the context of Pullman _______ abstention), yet appellant eschewed any attempt to effectuate an immediate appeal. Her effort to raise the issue at this late date is, therefore, especially unbefitting. 10 could provide no meaningful relief). VI. CONCLUSION VI. CONCLUSION We need go no further. Although the plaintiff's plight may evoke a certain amount of sympathy, the undisputed fact is that her dismissal implicated no breach of a clearly established federal constitutional or statutory right. The judgment below is summarily affirmed. See 1st Cir. ________________________________________ ____________ R. 27.1. Costs to appellees. _______ __________________ 11