Bergstrom v. Town of Barrington      CV-96-152-JD   04/30/97
                UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


Carol A. Bergstrom

       v.                              Civil No. 96-152-JD

Town of Barrington, et al.


                           O R D E R


     The plaintiff, Carol A. Bergstrom, brought this action under

42 U.S.C. § 1983 against the defendants, John F. Dolan, Jr., both

individually and in his capacity as Executive Administrator of

the town of Barrington, New Hampshire, and the town of

Barrington.  The plaintiff alleges that the defendants violated

her rights to procedural due process, substantive due process,

and equal protection by declaring her duplex in violation of a

local zoning ordinance.  Before the court are the defendants'

motion for summary judgment (document no. 11) and defendant

Dolan's motion for summary judgment on the issues of qualified

and absolute immunity (document no. 13).[1]

_____

   [1]Also before the court are two motions concerning the
plaintiff's attempt to collect attorney's fees and costs relating
to a mediation hearing during which she asserts that the
defendants did not negotiate in good faith.  The court refers
these motions to Magistrate Judge Muirhead in accordance with
Fed. R. Civ. P. 54(d)(2)(D) ("[T]he court . . . may refer a
motion for attorneys' fees to a magistrate judge under Rule 72(b)
as if it were a dispositive pretrial matter.").

<u>Background</u>[2]

In 1972, the plaintiff and her former husband purchased a lot located at 34 Lakeshore Drive in Barrington, New Hampshire, (the "property") with the intent of developing the property by building a duplex there. The two already owned the lot next door at 32 Lakeshore Drive. On August 28, 1972, the plaintiff's former husband applied to the town of Barrington for a building permit. With the application he submitted drawings showing a building containing two units that are mirror images of each other. On September 2, 1972, the application for the building permit was approved and a permit, number 155, was issued.

Later that year, the town adopted a zoning ordinance requiring that each residence rest on a lot with a minimum area of 40,000 square feet. It also required an additional 20,000 square feet for each additional dwelling. The plaintiff's property is less than 40,000 square feet. However, because the plaintiff and her former husband believed that the ordinance did not apply to their building permit, which was granted before the ordinance was passed, they began to construct a duplex on the property as they had initially intended.

_____

[2]The court, as it must, considers all disputed factual issues in the light most favorable to the plaintiff. This recitation merely summarizes the facts relevant to the resolution of the instant motion.

Progress was slow, largely due to financial difficulties. Because of delays in construction, in 1978, the plaintiff's former husband applied for a re-issue of the building permit. On March 4, 1978, permit number 155 was reissued. By 1986, construction on both units of the duplex was completed.

The plaintiff and her former husband subsequently divorced. On June 2, 1992, the plaintiff was awarded the property in a divorce decree. At around this time, the plaintiff sought to have some corrective construction done on the property. However, her former husband cancelled an initial inspection that she had arranged. The plaintiff's former husband also reported a suspected building code violation on the property, in response to which the plaintiff applied for and was granted a permit for the installation of two heating systems.

On May 19, 1993, the plaintiff appeared before the town's zoning board on a matter pertaining to 32 Lakeshore Drive, for which she was seeking a variance. At this time, she was handed a letter by defendant Dolan in which he directed her either to cease and desist using the property as a duplex or to demonstrate to him its lawfulness. The letter informed the plaintiff that "the duplex structure on the [property] appears to be unlawful," and warned that unless she complied she "may be subject to injunctive relief . . . and to civil and criminal penalties."

3

Plaintiff's Memorandum of Law in Support of Objection to Motion for Summary Judgment, Ex. 1, app. I.

The plaintiff immediately asked defendant Dolan what would be required to resolve his concerns and he told her that a building permit or compelling evidence that an authority from the town knew about the duplex would suffice. At that time, the plaintiff offered several names of present and former town officials whom she asserted would be able to vouch for the duplex's legality, but defendant Dolan was not convinced. She returned to Town Hall later that day with the building permits but defendant Dolan did not see her until the next morning, when he told her that the permits were illegal and that he would not retract the letter. The plaintiff ultimately had former town selectmen write to defendant Dolan on her behalf, but this effort also failed to achieve the desired result.

In addition to the issuance of the building permits and the knowledge of town officials that the property was being used as a duplex, the property has been taxed as a duplex. Various town tax records indicate it as a "duplex," "Apts," or "2 APTS." At least four other multi-family dwellings in the town have been allowed to be used as such despite the fact that they also rest on lots of less than the square footage required by the town zoning ordinance.

4

On June 23, 1993, Attorney Christopher Wyskiel wrote a letter to defendant Dolan on the plaintiff's behalf. The two sides engaged in negotiations, but defendant Dolan was not persuaded by additional information provided by the plaintiff and the two sides continued to disagree about the legality of the duplex. On March 22, 1994, Attorney Wyskiel proposed that the differences between the parties be resolved by a state court declaratory judgment action. Attorney Wyskiel and defendant Dolan drafted an agreement, but the plaintiff never signed it because she was unwilling to agree with the town's insistence that she waive any claim for monetary damages against it as part of any settlement. Because a member of Attorney Wyskiel's firm served on the town's planning board, the plaintiff obtained new counsel, who contacted the town on the plaintiff's behalf in May 1995, demanding monetary damages. At that time, Dolan indicated to the plaintiff for the first time that she should have appealed his 1993 letter. The plaintiff has not (1) brought a state court declaratory judgment action; (2) appealed Dolan's position that the duplex violates the zoning ordinance to the Barrington Zoning Board; or (3) sought a variance for the property from the Barrington Zoning Board. To date, the town has not pursued any further enforcement action.

On October 13, 1993, during the course of this dispute, the

5

plaintiff entered a contract for the sale of the property to be completed on or before December 10, 1993. The town did not complete its investigation or retract its letter, however, and the sale fell through. The plaintiff has also lost rent from the duplex due to the controversy.

On March 19, 1996, the plaintiff brought this action seeking monetary, declaratory, and injunctive relief, alleging that the defendants (1) violated her right to procedural due process; (2) violated her right to substantive due process; and (3) violated her right to equal protection.[3] The defendants have moved for summary judgment as to all of the plaintiff's federal claims.

## Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[3]The plaintiff also brought supplemental state law claims for "municipal estoppel" and interference with contractual relations.

6

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The parties seeking summary judgment bear the initial burden of establishing the lack of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). However, once the defendants have submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

I.   Procedural Due Process

Before analyzing the plaintiff's procedural due process claim, the court notes that "federal courts do not sit as a super zoning board or a zoning board of appeals." Raskiewicz v. Town of New Boston, 754 F.2d 38, 44 (1st Cir. 1985). "[W]here, as

7

here, the state offers a panoply of administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. § 1983." Id. A plaintiff is not required to exhaust her administrative remedies to bring a § 1983 claim, but at a minimum, such claims must be ripe for federal court adjudication before their merits can be resolved. See, e.g., Raper v. Lucey, 488 F.2d 748, 751 n.3 (1st Cir. 1973).

To be ripe, (1) an issue must be fit for judicial decision, and (2) failure of the court to adjudicate the dispute must work a hardship on the parties. See W.R. Grace & Co.--Conn. v. EPA, 959 F.2d 360, 364 (1st Cir. 1992). One factor to be considered under the fitness for review analysis is the degree to which the challenged administrative action is final. See id. Ripeness is concerned with "the extent to which the claim involves uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all." Id. (quotation marks and citation omitted). The ripeness determination "is often sui generis," dependent on the "idiosyncratic features" typical of "most litigation." Ernst & Young v. Depositors Econ. Protection Corp., 45 F.3d 530, 535 (1st Cir. 1995). The ripeness requirement applies to due process claims. See, e.g., Tari v. Collier County, 56 F.3d 1533, 1535 (11th Cir. 1995); Southview Assocs.,

8

Ltd. v. Bongartz, 980 F.2d 84, 96 (2d Cir. 1992); Bigelow v. Michigan Dep't of Natural Resources, 970 F.2d 154, 160 (6th Cir. 1992).

The defendants claim, inter alia, that the plaintiff's procedural due process claim is not ripe for adjudication by the court. The plaintiff, in response, urges that her claims are ripe for review despite the existence of available administrative and state court procedures of which she has not availed herself. She asserts that, under Mathews v. Eldridge and its progeny, she was entitled to a pre-deprivation hearing before being handed the cease and desist letter. See, e.g., Zinermon v. Burch, 494 U.S. 113 (1990); Mathews v. Eldridge, 424 U.S. 319 (1976). For the plaintiff's argument to succeed, the cease and desist letter must constitute the final deprivation of a property right.

A decision is final when "the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 193 (1985). For zoning decisions, state law determines (1) who the relevant decision-maker is, and (2) when that decision is final. Cf. City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988) (plurality opinion) (identification of policymakers for § 1983 purposes is a matter of state law). The opportunities, not taken advantage of by the

9

plaintiff, to challenge defendant Dolan's decision and to seek a variance from the Barrington Zoning Board tend to indicate that the town had not made a final decision.[4] See, e.g., Tari, 56 F.3d at 1536 & n.7 (under Florida law, decision from county as to existence of violation and extent to which it would be enforced, rather than notice of violation sent by zoning investigator, constitutes final decision on application of zoning ordinance, for "if a local investigator's issuance of a citation was all that was necessary for a claim to ripen, the federal courts would become 'master zoning boards' in disputes which are best handled at the local level"); Taylor Inv., Ltd. v. Upper Darby Township, 983 F.2d 1285, 1292 (3d Cir. 1993) (under Pennsylvania law, action of zoning hearing board, rather than individual zoning officer, constitutes final interpretation or application of zoning ordinance); Southview Assocs, 980 F.2d at 98 (under Vermont law, denial of single application to environmental board does not constitute final decision on subdivision plan).

In a case similar to this one, the Tenth Circuit decided that a plaintiff's claim was not ripe for adjudication. See Bateman v. City of West Bountiful, 89 F.3d 704, 706 (10th Cir. 1996). In that case, the plaintiff purchased a residential lot

_____

[4]The opportunity to begin state court proceedings, on the other hand, represents an appeal to a different decisionmaker, and thus plays no part in the court's ruling.

10

granted conditional use zoning. See id. at 705. The conditional use zoning allowed subdivision into smaller lots and development of those lots without complying with the normal setback requirements. See id. He developed one of the smaller lots in reliance on the conditional use zoning, but when he tried to sell it found that the city had recorded a certificate of noncompliance for failure to meet the setback requirements. See id. The certificate effectively prevented him from selling the lot or refinancing the property. See id. at 706. However, rather than seeking a variance or other appeal, the plaintiff filed an action in federal district court alleging, inter alia, due process and equal protection violations. See id. at 705. The district court ruled that the claims were not ripe, and the Tenth Circuit affirmed. See id. The court held that, under Utah law, it was the board of adjustment, not the zoning inspector, who had the authority to make a final determination which would be subject to appeal. See id. at 707. Therefore, the plaintiff could not avail himself of the federal court until he appealed the initial determination of the certificate of noncompliance to the board of adjustment for a final determination. See id.

Relevant New Hampshire law, like the law of other states in cases cited supra, indicates that the relevant decisionmaker in

11

this case is the town of Barrington acting through its zoning board of adjustment.  See N.H. Rev. Stat. Ann. ("RSA") § 674:13(I) (1986) (zoning board of adjustment has power to grant permits "based on considerations of justice and equity"); id. § 674:33(I) (1986) (zoning board of adjustment has power (a) to "hear and decide appeals if it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement thereof or any ordinance adopted pursuant thereto" and (b) to authorize variances and grant exceptions to zoning ordinances); see also id. § 676:3(I) (1986) (local land use board required to issue "final written decision" approving or disapproving permit applications).  The fact that the plaintiff has not sought review of defendant Dolan's cease and desist letter or a variance from the zoning board of adjustment demonstrates that the town of Barrington has not made a final decision.  The fact that the defendants have not taken any enforcement action since sending the cease and desist letter also tends to show that any deprivation of the plaintiff's property rights is not yet complete.[5]

_____

[5]The plaintiff also asserts that the cease and desist letter was deficient under New Hampshire law, both in its failure to advise the plaintiff of the fact that she had sixty days to answer and in its failure to state the facts constituting the

12

Therefore, the court finds that the plaintiff has not obtained a final decision by the relevant decisionmaker and dismisses the plaintiff's procedural due process claim without prejudice pursuant to Fed. R. Civ. P. 12(b)(1) for lack of ripeness.

II.   Substantive Due Process and Equal Protection

The defendants argue that the plaintiff's substantive due process and equal protection claims are also not ripe for adjudication.  However, their argument with respect to these claims is without merit.  See Zinermon, 494 U.S. at 125 (for specific protections defined in the Bill of Rights and substantive due process claims, "the constitutional violation actionable under § 1983 is complete when the wrongful action is taken"); Licari v. Ferruzzi, 22 F.3d 344, 349-50 (1st Cir. 1994) (substantive due process claim based on same factual allegations as procedural due process claim was ripe for adjudication but without merit); Smithfield Concerned Citizens v. Town of Smithfield, 907 F.2d 239, 242-43 (1st Cir. 1990) (facial

_____

violation, including the date of any inspection from which the facts were ascertained.  In this respect, the plaintiff's claim that defendant Dolan's letter was deficient, rather than supporting her claim, leads to an inference that it was not a final decision.

13

substantive due process challenge to zoning ordinance ripe upon passage of ordinance); Lanmar Corp. v. Rendine, 811 F. Supp. 47, 53 (D.R.I. 1993). But see Taylor Inv., Ltd. v. Upper Darby Township, 983 F.2d 1285, 1292 (3d Cir. 1993) (finding substantive due process and equal protection claims as well as procedural due process claim arising from zoning dispute unripe for adjudication when zoning authorities had not made final decision); Bigelow v. Michigan Dep't of Natural Resources, 970 F.2d 154, 159 (6th Cir. 1992) (finding equal protection claim as well as procedural due process claim related to takings claim unripe for adjudication when state administrative agency had not made final decision). The defendants also claim that their conduct cannot give rise to a substantive due process or equal protection violation.

To avoid summary judgment on her substantive due process claim, the plaintiff must show "that the state action was 'in and of itself . . . egregiously unacceptable, outrageous, or conscience-shocking.'" Licari, 22 F.3d at 347 (quoting Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990)). "[A] regulatory board does not transgress [substantive] due process requirements merely by making decisions 'for erroneous reasons' or by 'making demands which arguably exceed its authority under the relevant state statutes.'" Licari, 22 F.3d at 350 (quoting Amsden, 904 F.2d at 757, itself quoting Creative Env'ts, Inc. v. Estabrook, 680 F.2d

14

822 (1st Cir. 1982)).  Similarly, to sustain a claim for an equal

protection violation, the plaintiff must show that

> (1) the person, compared with others similarly
> situated, was selectively treated; and
> (2) that such selective treatment was based on . . .
> malicious or bad faith intent to injure a person.

Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995) (quoting

Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of

Selectmen, 878 F.2d 16, 21 (1st Cir. 1989)).  Bad faith or

malicious intent to injure cases are infrequent and the standard

of proof "should be scrupulously met."  Id. at 911.[6]

The acts that the plaintiff asserts constitute the basis for

her substantive due process and equal protection claims center

around (1) the delivery of the May 19 cease and desist letter;

and (2) defendant Dolan's subsequent refusal to alter his

position in spite of the plaintiff's evidence that her duplex was

legal.  In the light most favorable to the plaintiff, the letter

might have been unjustified, outside the bounds of the

defendants' authority, or even malicious.  However, even in that

light no reasonable fact finder could conclude that the

challenged conduct rose to the level necessary to amount to a

---

[6]The court considers the plaintiff's substantive due process
and equal protection claims together because the same type of
evidence that would serve to establish a substantive due process
violation would also tend to establish a "bad faith or malicious
intent to injure" equal protection violation.

15

substantive due process or equal protection violation.  In the same way, defendant Dolan's refusal to alter his position might be arbitrary, wrongheaded, or even spiteful, but it does not rise to the level of a violation of the plaintiff's substantive due process or equal protection rights.

The undisputed facts show that defendant Dolan issued a cease and desist letter premised on his belief that the plaintiff's duplex violated a local zoning ordinance and has subsequently failed to be persuaded that his initial decision was mistaken.  These alleged improprieties do not remove this case from the realm of everyday zoning disputes that the First Circuit has found do not rise to the level of § 1983 violations.  As the First Circuit has noted in a similar context:

> Every appeal by a disappointed developer from an adverse ruling by a local . . . planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason.  It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983. . . .  In short, we see nothing in the present case to distinguish it sufficiently from the usual land developer's claim under state law to warrant recognition of a federal constitutional question.  [The plaintiff] may quite possibly have state law claims on the facts alleged. If so, there appear to be adequate state law remedies to vindicate these claims without resort to a federal court.

16

<u>Creative Env'ts, Inc. v. Estabrook</u>, 680 F.2d 822, 833 (1982); <u>see</u> <u>Cloutier v. Town of Epping</u>, 714 F.2d 1184, 1190 (1st Cir. 1983) ("[P]laintiffs' long list of harassing actions reveals not the type of egregious behavior that might violate the due process clause, but rather . . . disputes over the interpretation of the state and town zoning laws.").

Thus, the plaintiff has not produced sufficient evidence of egregious, outrageous, or conscience-shocking behavior to raise a reasonable inference that the defendants violated her substantive due process rights and the court grants the defendants summary judgment on the plaintiff's substantive due process claim. Nor has the plaintiff met her burden of demonstrating a genuine issue of material fact requiring a trial on the issue of whether the challenged actions constituted a "bad faith or malicious intent to injure" denial of her right to equal protection. Therefore, the court also grants summary judgment to the defendants on the plaintiff's equal protection claim.

Conclusion

For the reasons stated above, the plaintiff's procedural due process claim is dismissed without prejudice for lack of ripeness. The court grants defendants' motion for summary judgment (document no. 11) with respect to the plaintiff's

17

substantive due process and equal protection claims.  The court declines to exercise jurisdiction over the plaintiffs' claims arising under New Hampshire law.  Defendant Dolan's motion for summary judgment on the issues of qualified and absolute immunity (document no. 13) is denied as moot.  The plaintiff's motions (A) for attorney's fees and costs (document no. 21) and (B) for leave to file a reply memorandum in response to the defendants' objection to the plaintiff's motion for attorney's fees and costs (document no. 26) are referred to Magistrate Judge Muirhead.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

April 30, 1997

cc:  Jane H. Davison, Esquire
     William G. Scott, Esquire

18