Eduardo **BADO–SANTANA,**
et al., **Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

No. 00–2517 (DRD).

United States District Court,
D. Puerto Rico.

Sept. 17, 2003.

Jose A. Gallart, Michelle Pirallo–Di Cristina, San Juan, PR, for plaintiffs.

Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Bridgestone–Firestone, Inc.

John R. Trigg, Habib Nasrullah, Wheeler Trigg and Kennedy, P.C., Denver, CO, Manuel A. Guzman–Rodriguez, Guzman & Steffens, San Juan, PR, for Ford Motor Company.

### AMENDED OPINION & ORDER

DOMINGUEZ, District Judge.

Pending before the Court is Defendant's, Ford Motor Company, (hereinafter referred to as "Ford" or "Defendant"),

Motion for Partial Summary Judgment[1] (Docket No. 63), which Plaintiffs, Eduardo Bado Santana, et al., (hereinafter referred to as "Legal–Aged Plaintiffs" or "Plaintiffs"), duly opposed (Docket No. 64). On November 11, 2002, the Court referred the matter to Magistrate Judge Aida Delgado Colon for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B); FED. R.CIV. P. 72(b); and Local Rule 503. (Docket No. 44). The Magistrate filed a Report and Recommendation ("R & R") on February 26, 2003 (Docket No. 76), and thereafter an Amended R & R. (Docket No. 78). In the report, the Magistrate recommended that the Motion for Partial Summary Judgment filed by Defendant be granted.[2] Plaintiffs filed their objections thereto, on March 10, 2003. (Docket No. 80). After considering Plaintiffs' objections, and reviewing *de novo* the R & R, the Court determines that Ford's Motion for Partial Summary Judgment should be **GRANTED.**

## I. MAGISTRATE REPORT AND RECOMMENDATION

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV. P. 72(b); Rule 503, Local Rules, District of Puerto Rico. *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Of course, an adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 510.2(A); FED.R.CIV. P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

*See* 28 U.S.C. § 636(b)(1).

 However, pursuant to FED.R.CIV. P. 72(b), "[a]bsent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992). *See also Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was enti-

---

**1.** Ford Motor Company moved for partial summary judgment on the claims of all legal-aged plaintiffs, alleging those claims are barred by the applicable statute of limitations.

**2.** In addition, the Magistrate recommended to deny, as moot, Defendant's Motion to Strike (Docket No. 66).

tled to a de novo review, "however he was not entitled to a de novo review of an argument never raised". *See generally United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

Provided Plaintiffs have objected to all the determinations addressed by the Magistrate, the Court shall make a *de novo* determination and review of the arguments raised by both parties.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Court must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000)(". . . the Court must draw all reasonable inferences in favor of the nonmoving party . . ."); *see also, Leahy v. Raytheon Company,* 315 F.3d 11, 17 (2002) (". . . the court must take the record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor'.") (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990); see also, *Plumley v. Southern Container Inc.,* 303 F.3d 364, 368–69 (1st Cir.2002)).

Plaintiffs filed the instant case pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332, on November 30, 2000. (Docket No. 1), against Defendants Bridgestone–Firestone, Inc., and Ford Motor Company. Plaintiffs' claims for damages stem from a vehicle accident which resulted in the death of the driver of the vehicle, Carlos Bado Barreto. The instant case involves a product liability suit regarding a Ford Explorer ("Explorer"), a Sports Utility Vehicle ("SUV"), that rolled over while being driven by its owner.

On May 2, 1999, Plaintiffs, Carlos Bado–Barreto, Tatiana Cortes Gonzalez, and Israel Dominicci Rivera, were traveling in Bado's Ford Explorer on their way to Aguadilla, Puerto Rico. While in state road # 102, the rear tires of the Explorer exploded, causing Bado–Barreto to lose control of the vehicle. As a consequence, the Explorer began to skid across the road and finally rolled over several times until crashing against a tree. As a result of the crash, Bado–Barreto was expelled from the Explorer and was found approximately 69 feet away from the vehicle. As a consequence of the accident, Bado–Barreto lost his life. He passed away later that same day.

Plaintiffs [3], being relatives and friends of the deceased, filed the instant complaint claiming damages. Plaintiffs filed the instant product liability suit for the wrongful death of Bado–Barreto, and the damages

**3.** The total number of Plaintiffs in the case at bar is twelve (12). Plaintiffs Eduardo Bado Santana, Alice Arlene Barreto Toro, Ivan E. Bado Barreto, Eduardo J. Bado Barreto, Tatiana Cortes Gonzalez, Carolina Marie Bado Cortes, Israel Dominicci Rivera, Ernesto Cortes, Carmen Nilda Gonzalez, Ernesto J Cortes Gonzalez, all filed their complaint on November 30, 2000. Plaintiffs' Alice Toro Ortiz, and Candelario Barreto Valentin filed their complaint on April 30, 2001. Since Defendants' argue that the claims of all legal aged plaintiffs are time barred, from the time

the first complaint was filed, the Court will examine this argument collectively with respect to all those Plaintiffs.

Legal Aged Plaintiffs are Eduardo Bado Santana, Alice Arlene Barreto Toro, Ivan E. Bado Barreto, Eduardo J. Bado Barreto, Alice Toro Ortiz, Candelario Barreto Valentin, Ernesto Cortes, Carmen N. Gonzalez, and Israel Dominicci–Rivera. (All Plaintiffs, except Tatiana Cortes Gonzalez and Carolina Marie Bado Cortes, wife and daughter, respectively, of the deceased).

suffered as a result of the negligent design and construction of the rear tires of the Ford Explorer involved in the accident. In their original complaint, Plaintiffs averred that Bridgestone–Firestone, Inc., was negligent inasmuch as it designed, manufactured, distributed, and sold defective tires, model Firehawk ATX DOT VD. Plaintiffs further stated that Co–Defendant Ford was negligent in including the Firestone tires as standard equipment of the Ford Explorers, because Ford should have known that the tires were defective and dangerous. (Docket No. 1, ¶ 22, ¶ 23). Plaintiffs alleged that it was not until August 9, 2000, at the time Brigdestone–Firestone published a recall of certain tires, that they became aware for the first time that the May 2, 1999, accident was caused by the faulty design and manufacture of the tires.

Plaintiffs voluntarily dismissed all claims against Bridgestone–Firestone, Inc., on May 8, 2001 (Docket No. 24),[4] and thereafter filed a Second Amended Complaint (Docket No. 27), only against Ford Motor Company, stating this time that the accident was caused by the roll over of the Explorer, and because of the vehicle's design defects.[5] In the second complaint, Plaintiffs specifically asserted that Ford was negligent inasmuch as it had knowledge since 1989 that the Ford Explorer had design problems, making them more prone to roll over; that Ford did not correct said design defect, despite recommen-

dations to do so; and that Ford included as its standard equipment a defective seat belt system.[6]

Ford filed a Motion to Dismiss (Docket No. 43), on the ground that all legal aged Plaintiffs' claims were barred by the one-year statute of limitations for tort actions set forth in Article 1868 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5298. (Docket No. 43). Plaintiffs thereafter opposed, stating the August 9, 2000, Brigdestone–Firestone recall, and the publicity generated as a consequence of the litigation between Bridgestone–Firestone, Inc., and Ford, caused the discovery for the first time that the accident was the responsibility of negligent design and construction of the Ford Explorer. (Docket No. 51).

The Court denied Defendant's Motion to Dismiss without Prejudice, albeit indicating that it was strongly inclined to dismiss the complaint as time-barred. Because Ford attached documents as exhibits to its reply to Plaintiffs' opposition (Docket No. 48), the Court decided to grant all parties the opportunity to present materials outside the pleadings, and thus denied the motion enabling all to raise the matter in accordance with Fed.R.Civ.P. 56. (Docket No. 62). Ford complied and filed the instant Motion for Partial Summary Judgment, which Plaintiffs vigorously opposed. The arguments set forth through the parties' summary judgment and respective opposition, are parallel to the ones set forth

---

**4.** In their motion for voluntary dismissal, Plaintiffs acknowledged that the damages observed in the Firestone tires were caused during the rollover of the Explorer, and that the tires were not the direct cause of the accident. (Docket No. 24, ¶ 2).

**5.** Plaintiffs voluntarily dismissed the case against Bridgestone prior to the time the case was transferred to the Judicial Panel on Multi–District Litigation in the Southern District of Indiana. (Docket Nos. 23, 24, 28 & 31).

Therefore, this District Court determined that the jurisdiction of the "MDL" was foreclosed and continued to proceed with the case, allowing Plaintiffs to file an amended complaint.

**6.** In their second amended complaint, Plaintiffs claim that Ford was negligent inasmuch as it had knowledge, since 1989, that the Explorer had design problems that made Explorers more prone to roll over than other sport utility vehicles in the market.

under the motion to dismiss and its opposition, but now accompanied by documents outside the pleadings. The Court now addresses those arguments, as briefed in the preceding paragraph, and reviewing the Magistrate's R & R, *de novo*.

### III. SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56(c), provides that it is appropriate to enter summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." The First Circuit has determined that summary judgment is appropriate even when "[there is a] mere existence of some alleged factual dispute between the parties [which would not] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir.1996) (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975).

The role of summary judgment is to examine behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir.1995). In conventional summary judgment practice, the moving party has the initial responsibility of suggesting the absence of a genuine issue of material fact. *Quintero de Quintero v. Aponte–Roque*, 974 F.2d 226, 227–28 (1st Cir.1992). That entails supporting the motion, by affidavits, admissions, or other materials of evidentiary quality, as to issues on which the movant bears the burden of proof. *McIntosh*, 71 F.3d at 33. Once the movant has fulfilled this obligation, the burden shifts to the summary judgment targeted party to demonstrate that a trialworthy issue exists. *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000). In the last analysis, summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### IV. ANALYSIS

Defendant Ford moves for partial summary judgment on the ground that Plaintiffs' product liability claims are time barred because they were filed on November 30, 2000, more than a year after the accident occurred, May 2, 1999. Plaintiffs, on the other hand, sustain that they were not aware that the Ford Explorer was defective at the time of the accident, and that they became aware of the vehicle's defect on or around August 9, 2000, as a result of the nationwide recall issued in connection with Ford Explorer sport utility vehicle. Plaintiffs further contend, as to the statute of limitations defense, that they were unaware of the existence of their cause of action until August, 2000, and were therefore unable to file suit until

acquiring sufficient knowledge as to who caused their injuries. Magistrate Judge Delgado Colon concluded that Plaintiffs filed their suit belatedly, for they failed to comply with their burden of proving that they lacked the requisite knowledge of the identity of the tortfeasor, before the corresponding statute of limitations expired. See *Tokyo Marine & Fire Ins., Co. Ltd. v. Perez & Cia.*, 142 F.3d 1, 3 (1st Cir.1998).

### A. *Applicable Statute of Limitations*

■ In this diversity tort action the statute of limitations is substantive law, therefore, Puerto Rico law controls. *See Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Daigle v. Maine Medical Center*, 14 F.3d 684, 689 (1st Cir.1994). Puerto Rico's Civil Code provides that actions for obligations arising from fault or negligence prescribe one year from the moment the aggrieved person has knowledge of the injury; that is to say, the statute of limitations provides a one-year term for a tort action. 31 P.R. Laws Ann., § 5298 (1990). The term is interrupted by an extrajudicial claim, acknowledgment of the debt, or filing of a complaint. 31 P.R. Laws Ann., § 5303 (1990). *Silva Wiscovich v. Weber Dental Mfg. Co.*, 19 P.R. Offic. Trans. 550, 1987 WL 448272 (1987); *Diaz de Diana v. A.J.A.S. Ins. Co.*, 10 P.R. Offic. Trans. 471, 474, 1980 WL 138494 (1980).

■ The Court examines the issue of statutes of limitation in accordance with local law. Under article 1802 of the Puerto Rico Civil Code, a person who causes damage to another through fault or negli-

gence shall be liable in damages.[7] Article 1868 of the Puerto Rico Civil Code establishes a one-year limitations period for actions arising from fault or negligence, from the time the aggrieved person had knowledge thereof.[8] "A plaintiff who is not aware of the existence of a cause of action is essentially incapable of bringing suit within the limitation period." *See Barbara Arnold, et al v. Fernando J. Montilla, et al*, 13 F.Supp.2d 229, 232 (D.Puerto Rico 1998) (*quoting, a translation of Colon Prieto v. Geigel*, 115 P.R.Dec. 232, 237 (1984)). "In circumstances where a plaintiff has not abandoned a cause of action, but instead was never aware that such a cause of action existed, the statute of limitations would not operate as a bar to the exercise of the plaintiff's legal rights." *Rodriguez–Suris v. Montesinos*, 123 F.3d 10, 15 (1st Cir.1997).

■ The general rule is that the one-year "term does not start to run from the occurrence of the negligent act or damage, but from the moment the damage is known." *Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc.*, 896 F.2d 656, 658 (1st Cir.1990)(*citing Rivera Encarnacion v. Estado Libre Asociado de P.R.*, 13 P.R. Offic. Trans. 383, 385, 1982 WL 210553 (1982)); see also, *Ramos v. Roman*, 83 F.Supp.2d 233, 238 (D.Puerto Rico 2000)(containing a catalogue of prescription theories and a compilation of cases). **Although the general rule establishes that the one-year term starts on the date the plaintiff becomes aware of the damage and who caused the damage, if the plaintiff's lack of awareness is due to his own "lack of diligence"** [9]**, then the**

---

7. *See* 31 P.R. Laws Ann., § 5141.

8. *See* 31 P.R. Laws Ann., § 5298.

9. A Plaintiff's "lack of diligence" in properly identifying a cause of action and/or liable

party will not save him [her]. See discussion, *infra, Vega Lozada Y Otros v. J. Perez & CIA., Inc.*, 135 P.R.Dec. 746, 755 (1994), quoting *Lopez v. Autoridad de Carreteras*, 133 P.R.Dec. 243, 256 (1993).

prescriptive period will begin to run from the date the alleged tort occurred. The plaintiff is then presumed to have knowledge of the injury at the time of the tortious act, and has the burden of proving that he learned of the act at a later date. *See Rivera Encarnacion,* 13 P.R. Offic. Trans., at 385, 1982 WL 210553, (emphasis added) (*citing* L. Diez Picazo, *La Prescripcion en el Codigo Civil,* 240 (Barcelona, Bosch ed.1964)). *See also M.R. (Vega Alta), Inc. v. Caribe General Electric Products, Inc.,* 31 F.Supp.2d 226, 239 (D.Puerto Rico 1998)(The statute of limitations for tort claims in Puerto Rico is one year according to Sections 1868 and 1869 of the Civil Code of Puerto Rico, 31 P.R. Laws Ann., §§ 5298 & 5299).

The Supreme Court of Puerto Rico has held that "a plaintiff will be deemed to have 'knowledge' of the injury, for purposes of the statute of limitations, when she [he] has 'notice of the injury, plus notice of the person who caused it.' " *Id.* at 13; *Santiago Hodge v. Parke Davis & Co.,* 909 F.2d 628, 632 (1st Cir.1990). Thus the statute of limitation "does not start to run from the occurrence of the negligent act or damage, but from the moment the damage is known." *Barretto Peat, Inc. v. Luis Ayala Sucrs., Inc.,* 896 F.2d at 658, (*quoting Rivera Encarnacion v. Estado Libre Asociado De Puerto Rico,* 113 P.R.Dec. 383, 385, 1982 WL 210553 (1982)).

Knowledge of the tort is not easy to ascertain or prove. It has been said, however, that notice of the injury is established by proof of:

> some outward or physical signs through which the aggrieved party may become aware and realize that he/she has suffered an injurious after effect, which, when known becomes a damage even if at the time its full scope and extent cannot be weighed. These circumstances need not be known in order to

argue that the damage has become known, because its scope, extent and weight may be established later on during the prosecution of the remedial action.

*Delgado Rodriguez v. Nazario De Ferrer Y Otros,* 121 P.R. Dec. 347, 1988 WL 580813 (Official English Translation) (P.R. May 16, 1988) (*quoting* H. Brau del Toro, Los Danos y Perjuicios Extracontractuales en Puerto Rico 639–40, Pub. J.T.S., Inc.) (2d ed.1986) (internal quotation marks omitted).

▮ And "[o]nce a plaintiff is on 'notice of the injury,' " the plaintiff may "not wait for his [or her] injury to reach its final degree of development and postpone the running of the period of limitation according to his [or her] subjective appraisal and judgment." *Ortiz v. Municipio De Orocovis,* 113(13) P.R. Offic. Trans. 619, 622, 1982 WL 210544 (1982); *Rodriguez–Suris,* 123 F.3d at 13. However, existence of an injury alone will not always be enough to trigger the running of the statue of limitations. *See, e.g., Galarza v. Zagury,* 739 F.2d 20, 24 (1st Cir.1984) (stating that "knowledge of the author of the harm means more than an awareness of some ill effects resulting from an operation by a particular doctor"). "If a plaintiff is not aware of some level of reasonable likelihood of legal liability on the part of the person or entity that caused the injury, the statute of limitation will be tolled." *Rodriguez–Suris,* 123 F.3d at 13–14.

▮ In order to fully understand issues of knowledge and notice, it must be noted that there are two types of "knowledge" which affect the analysis of a statute of limitations situation. True knowledge applies where a plaintiff is actually aware of all the necessary facts and the existence of a likelihood of a legal cause of action. The second is "deemed knowledge." The con-

cept of "deemed knowledge" applies where a "plaintiff's subjective awareness is measured against the level of awareness that the plaintiff, having been put on notice as to certain facts and having exercised reasonable care regarding a potential claim, should have acquired." *Id.* at 14.

**"The law of Puerto Rico treats a person as being aware of all that, having awareness constituting notice, that person would have been likely to come to know through the exercise of care,"** keeping in mind that **"actual knowledge is not required where, by due diligence, such knowledge would likely have been acquired."** *Id.* (emphasis added). To determine the point at which a plaintiff should be held responsible for the required level of awareness, a court should look to "whether plaintiff knew or with **the degree of diligence** required by law **would have known** whom to sue." *Kaiser v. Armstrong World Indus.*, 872 F.2d 512, 516 (1st Cir.1989)(emphasis added). "Once a plaintiff is made aware of facts sufficient to put her on notice that she has a potential tort claim, **she must pursue that claim with reasonable diligence,** or risk being held to have relinquished her right to pursue it later, after the limitation period has run." *See Rodriguez–Suris*, 123 F.3d at 16 (*citing Villarini–Garcia v. Hospital Del Maestro, Inc.*, 8 F.3d 81, 85 (1st Cir.1993)(emphasis added)).

As the Supreme Court of Puerto Rico stated in *Vega v. J. Perez & Cia., Inc.*, 135 P.R.Dec. at 755, even though the rule on prescription is flexible, and generally favors plaintiffs, "if the lack of knowledge which impedes him from exercising the cause of action is due to plaintiff's lack of diligence, then the liberal considerations of the civil law doctrine of prescription are no longer applicable." *Id.* (*quoting Lopez v.*

*Autoridad de Carreteras*, 133 P.R.Dec. at 256, and J.M. Manresa y Navarro, Comentarios al Codigo Civil Espanol, Madrid, Ed. Reus, 1973,T.XII,pp. 1224–1225)(translation provided). "After a plaintiff knows of her injury, she cannot 'wait for [her] injury to reach its final degree of development' and postpone the running of the period of limitation according to [her] subjective appraisal and judgment." *Rabassa Suarez v. Ford Motor Company*, 204 F.Supp.2d 302, 304 (D.P.R.2002); quoting, *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir.2000). As can be pointed from Magistrate Judge Delgado Colon's R & R, where a "plaintiff brings a tort action more than a year after the operative events that gave rise to the suit, '[he] she beats the burden of proving that [he] she lacked the requisite knowledge at all relevant times." See *Hodge v. Parke Davis & Co.*, 833 F.2d at 7; see also, *Rabassa Suarez v. Ford Motor Company*, 204 F.Supp.2d at 304.

### B. *Application*

Plaintiffs filed their complaint on November 30, 2000, approximately a year and a-half after the car accident occurred. Carlos E. Bado–Barreto's tragic and unfortunate accident, from which Plaintiffs' claims arise, occurred on May 2, 1999. Both parties agree on this fact. Ford, however, argues in its Motion for Partial Summary Judgment[10] that Plaintiffs' claims are time barred by the one-year statute of limitations for tort actions, as established in Article 1868 of the Puerto Rico Civil, *supra*. The gist of the argument is that Plaintiffs "neglected to pursue their claim in a timely fashion, contrary to the requirements set forth in article 1868 of the P.R. Civil Code." 31 P.R. Laws Ann., § 5298.

On the other hand, Plaintiffs argue they did not have knowledge that the Explorer

---

**10.** As Ford identically argued in its previous Motion to Dismiss (Docket No. 43).

was defective until on or about August 9, 2000, when Bridgestone–Firestone published a recall of certain tires sold in the United States.[11] They further allege that because of the publicity generated by said recall, and the litigations that soon ensued all over the United States against Ford and Bridgestone–Firestone, Plaintiffs discovered, at that point, that the design of the Explorer was defective.[12] Plaintiffs claim that because this information became known to them on or about August 9, 2000, that it wasn't until that moment that the statute of limitation began to accrue. Since they filed their complaint on November 30, 2000, Plaintiffs contend their claims cannot be time-barred.

Plaintiffs challenge Ford's assertion that they did not exercise reasonable diligence, and have tried to persuade this Court that there were no available means to gain knowledge of their cause of action against Ford, even if due diligence had been exercised. They claim that, prior to their filing of the complaint, there was no reasonable way of discovering that Ford might have been responsible, in any way, of the accident in which Bado–Barreto died. The Court is not persuaded.

The rule on prescription in Puerto Rico is without doubt flexible, and it generally favors plaintiffs. The statute of limitations of one year does not begin to run, until a potential plaintiff possess knowledge of the tort, and the person responsible for causing it. However, if the lack of knowledge which impedes a plaintiff from exercising a cause of action is due precisely to plaintiff's "lack of diligence", "then the liberal considerations of the civil law doctrine of prescription are no longer applicable." *See Vega,* 135 D.P.R. at 755. "Once a plaintiff is made aware of facts sufficient to put her [him] on notice that she [he] has a potential tort claim, she [he] must pursue that claim with reasonable diligence, or risk of being held to have relinquished her right to pursue it later, after the limitation period has run." *Ramos v. Roman,* 83 F.Supp.2d at 251, n. 16, quoting, *Villarini–Garcia v. Hospital Del Maestro, Inc.,* 8 F.3d 81, 85 (1st Cir.1993).

The key issue here then is whether Plaintiffs' alleged lack of knowledge that Ford was responsible for the death of Bado–Barreto, within a year from the accident that killed him, was due to Plaintiffs' "lack of diligence". To justify their lack of knowledge, Plaintiffs allege that Ford concealed from the general public, all documents that contained information about the Ford Explorer design defects and roll over testing.[13]

The law of Puerto Rico treats a person as being aware of the facts sufficient to put him [her] on notice of a potential tort claim; the limitations period starts to run when he [she] knows or has reason to know of the injury which is the basis of the action. *Ramos v. Roman,* 83 F.Supp.2d at 237, 251. Having awareness constituting notice, a person is likely to come to "know" through the exercise of care. *Id.,* at 251, n. 16. As this Court once stated in *Ramos v. Roman, supra,* the Court understands the holdings of Puerto Rico decisions to mean that "actual knowledge is not required where, by due diligence, such knowledge would likely have been acquired." *Villarini–Garcia v. Hospital Del Maestro, Inc.,* 8 F.3d at 84. "It follows, then, that to determine the point at which a plaintiff should be held responsible for

---

11. Second Amended Complaint, (Docket No. 27, ¶ 21).

12. *Id.*

13. Plaintiffs' Opposition to Ford's Motion for Partial Summary Judgment (Docket No. 64, p. 7).

the required level of awareness of whether another particular person was an author of the injury, a court looks to 'whether plaintiff knew or with the degree of diligence required by law would have known whom to sue'." *Ramos v. Roman,* 83 F.Supp.2d at 251, n. 16, quoting, *Kaiser v. Armstrong World Indus.,* 872 F.2d at 516.

For such proposition, the Court considers, for example, the case of *In Re Ford Motor Co. Bronco II Product Liability Litigation,* 982 F.Supp. 388 (E.D.La.1997), from the United States Court for the Eastern District of Louisiana.[14] The Court finds this case to be similar to the one at hand, and as such, extremely useful for the purpose of defining "diligence" in this context. In that case, approximately 120 Bronco II owners from approximately nine (9) states, brought claims of fraudulent concealment and breach of implied warranty/redhibition against Ford Motor Co. Ford eventually moved for summary judgment seeking to dismiss the fraudulent concealment and redhibition claims of all Louisiana plaintiffs on grounds that (1) the claims of all Louisiana plaintiffs who purchased their Bronco II vehicles before June 23, 1992 were barred by prescription; (2) the claims of all Louisiana plaintiffs who purchased their Bronco II vehicles after June 23, 1992 were substantively precluded because information concerning the alleged defect was available to them at the time of purchase; and (3) the fraudulent concealment claims failed for the additional reason that plaintiffs cannot establish that Ford owed them a duty to disclose the alleged defect.

As in this case, Plaintiffs there argued that their claims were not time-barred because plaintiffs were unable to discover the alleged defect prior to one year before filing suit.[15] Plaintiffs maintained that Ford withheld information about the rollover propensity of the Bronco II from the public and investigating agencies. Finally, plaintiffs claimed that, even assuming their ignorance was not induced by Ford, their causes of action were not known or reasonably knowable by them. Nevertheless, after examining the media coverage of the defects in the Ford-manufactured Bronco II, during the period of time prior to the filing of the complaint, the district court granted summary judgment, holding that the Louisiana plaintiffs had not been "diligent" under the circumstances.

The federal court in Louisiana stated that "[i]n determining when the plaintiff should have known of the basis for his claim, the focus is on the reasonableness of the plaintiff's action or inaction. A plaintiff will be deemed to know that which he could have learned through reasonable diligence". *Id.* at 395–96.

> [i]f an opportunity is afforded to a party to know and to learn about a certain matter bearing on his interest and he fails or refuses to profit by it, if he closes his eyes to the notice spread before him and shuts his ears to oral information directly imparted to him, the law will hold him as bound by the same, and as fully notified as if he had taken thorough personal cognizance at the time of the information imparted and of the notice given.

---

**14.** The State of Louisiana also has a Spanish Napoleonic Civil Code tradition, and provides for a one year statute of limitations. In Louisiana, the prescriptive period for delictual actions, which include actions for fraud, is one year from the date injury or damage is sus-

tained. *See In re Ford Motor Co.,* 982 F.Supp. at 394. See also, La.Civ.Code, art. 3492.

**15.** *See Id.,* for the one year statute of limitations provided under the La.Civ.Code, art. 3492.

*Id.* at 396 (*quoting Hospital Service Dist. No. 1 v. Alas,* 657 So.2d 1378, 1383 (La. 1995)).

The Court must further recognize that in *Rabassa Suarez v. Ford Motor Company,* 204 F.Supp.2d 302 (D.P.R.2002), this District Court entertained an identical product liability complaint, for an accident which occurred on November 8, 1999. Having Plaintiffs filed suit on February 28, 2001, the Court dismissed the cause of action as time barred. Plaintiffs in that case also alleged that they became aware of the vehicle's defect, i.e., precisely a Ford Explorer, sometime around August 9, 2000, as a result of the nationwide recall. The Court there found that Plaintiffs, at the time of the accident, "knew or reasonably should have known that their damages were caused by the other [sic] driver's negligence or by some defective condition (namely, the rollover tendency) of the Ford Explorer." *Rabassa Suarez v. Ford Motor Company,* 204 F.Supp.2d at 304. The Court further held that "[e]ven a cursory review of the publicly available information on the issue would have revealed that this concern surfaced well before November 8, 1999, and, at the very least, would have enabled plaintiffs to pursue alternative theories of liability against ... defendants." *Id.,* and concluded that

Plaintiffs' lack of diligence could not have served to toll the statute of limitations.[16]

The Court turns to the record to determine whether Plaintiffs exercised reasonable diligence to discover the alleged defect.

The Court focuses on the media coverage concerning the rollover problems of sport-utility vehicles in general and Explorers in particular. Additionally, the Court shall analyze measures Ford took to alert consumers to the special characteristics of the Explorer. Accordingly, the Court finds helpful to outline information the media covered and the underlying events addressed regarding the rolling-over of Explorers.

Plaintiffs' counsel argues that the rollover propensity of the Ford Explorer was "Ford's best kept secret," and that Ford has been hiding this information since 1989. Plaintiffs maintain they did not have the means, the power, or the suspicion to discover the allegations they brought forth in 1999. The Court, however, agrees with our colleague in *Rabassa, supra,* that, would the Plaintiffs have made a simple inquiry; had they exercised any diligence at all as to whether they had a claim against Ford, they would have discovered an abundant amount of public information in relation

---

**16.** Plaintiffs appealed the District Court's judgment of dismissal in *Rabassa.* On February 12, 2003, the First Circuit Court of Appeals entered an unpublished judgment affirming *Rabassa, supra.* See, *Maria Esther Rabassa–Suarez v. Ford Motor Company,* Civil Case No. 02–1874.

The Court takes notice of the above referred judgment, as permitted by the First Circuit Court of Appeals Local Rule 32.3:

**Local Rule 32.3. Citation of Unpublished Opinions**

(a) An unpublished opinion of this court may be cited in this court only in the following circumstances:

(1) When the earlier opinion is relevant to establish a fact about the case. An unpublished opinion of this court may be cited to establish a fact about the case before the court (for example, its procedural history) or when the binding or preclusive effect of the opinion, rather than its quality as precedent, is relevant to support a claim of res judicata, collateral estoppel, law of the case, double jeopardy, abuse of the writ, or other similar doctrine.

The Court refers to the opinion/judgment of the Court of Appeals, only to establish the fact that the District Court's Opinion and Order in *Rabassa,* 204 F.Supp.2d 302 (D.P.R.2002), was affirmed by the appellate court.

to "rollover" allegations against sport utility vehicle manufacturers, including Ford. SUV's, including the Ford Explorer, have been the subject of intensive government and media scrutiny, and the filing of numerous lawsuits, since well before Plaintiffs' accident and the Bridgestone–Firestone recall. Ford, through the exhibits attached to its motions [17], provides this Court with ample examples of the extensive media coverage, both in print and televised media, of the rollover propensities of SUVs.[18] Furthermore, Ford provided reports published by a well-respected consumer publication, Consumer Reports, which ran various articles from September 1990, November 1992, August 1995, May 15, 1997, and June 1997, specifically with regards to the Ford Explorer and other SUV's. These published articles pointed to statistics which clearly suggested that SUV's had certain propensity to rollover accidents. The Court, on this point follows *In Re Ford Motor Co.*, 982 F.Supp. at 397, for the proposition **"[t]hat there can be no concealment when plaintiff has access to the allegedly concealed information is a principle too well-settled to dispute"** (emphasis added). In any event, even in claims of "culpable concealment, Puerto Rico law requires due diligence by the plaintiff in investigating suspicious circumstances." *Ramos v. Roman*, 83 F.Supp.2d at 250,

quoting *Rivera–Ramos v. Roman*, 156 F.3d 276, 282–283 (1st Cir.1998).[19]

While the Court notes that Plaintiffs claimed that Ford concealed documents, Plaintiffs' counsel argues that the information which led the Plaintiffs to believe that Ford was responsible for causing Bado–Barreto's accident, was concealed by Ford up until August 9, 2000. However, Plaintiffs' counsel fails to provide this Court with any evidence whatsoever to support this claim, or to support the claim that due diligence was exercised to some degree in identifying the party responsible for Bado–Barreto's death, or that the information discovered on August 9, 2000 was not available through any other means. As Magistrate Judge Delgado expressed in the R & R, in which the Court concurs, "[i]t is clear from plaintiffs' complaint that all of the alleged injuries were known to the plaintiffs on May 2, 1999, . . . more so they knew that the Ford Explorer was manufactured by the Ford Motor Company, and that the cause of the accident of the death of Bado–Barreto, was an apparent tire problem, loss of control of the vehicle, coupled with the rolling over." (Docket No. 76, at p. 13).

Furthermore, it appears from the evidence on record that published articles and programs were clear in advising that

---

**17.** See Defendant Ford Motor Company's Reply to Plaintiffs' Opposition To Motion To Dismiss and Memorandum of Law (Docket No. 48), and Ford's Motion for Partial Summary Judgment (Docket No. 63).

**18.** See also, Magistrate Delgado Colon's R & R, Docket No. 76, at p. 11, 14; "a cursory review of federal and state law would have revealed numerous readily accesible suits involving SUV rollover claims prior to plaintiffs' accident . . . referring the Court's attention to various safety promulgations found in the Code of Federal Regulations, . . . and to a number of publications and television programs, all prior to the date of the accident,

which refer to the high rollover risks of the SUVs."

**19.** Refer to, *Benitez–Pons v. Puerto Rico*, 136 F.3d at 61–64; *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Company*, 129 F.3d 222, 225 (1st Cir.1997); *Salois v. Dime Savings Bank of New York*, 128 F.3d 20, 25–26 (1st Cir.1997); *Rodriguez–Suris v. Montesinos*, 123 F.3d at 16; *Rivera–Gomez v. de Castro*, 900 F.2d at 3; *Ramirez Morales v. Rosa Viera*, 815 F.2d at 5; *Torres Ramirez v. Bermudez Garcia*, 898 F.2d 224, 229 & n. 2 (1st Cir. 1990).

SUV's are more prone to rollover than other vehicles; regulations were promulgated to advise consumers as to the roll over tendency.[20] As the Magistrate Judge indicated, perhaps because Plaintiffs after-acquired knowledge that the Explorer may rollover more than other SUV's, "said information does not diminish the well-known fact that all SUV's have propensity to rollover."[21] The Court on this point agrees with what Magistrate Judge Delgado correctly stated in her R & R; the issue here is whether plaintiffs could have timely acquired knowledge of the claim against Ford by the exercise of reasonable diligence, not whether they later acquired information that made their claim more probable or raised their suspicion of whom to sue to a legal certainty. (See Docket No. 76, at p. 13, following, *Torres*, 219 F.3d at 18–19, 22, a claim of concealment of a known defect will not toll the statute of limitations where the plaintiff plainly knew of the injury and the likely identity of the person to sue, and "[o]nce [plaintiffs are] put on notice of a potential legal cause of action, the statute of limitations beg[ins] to run.").

Moreover, the First Circuit has held that, when actions are filed more than a year after the alleged injury takes place, it is plaintiffs who carry the burden of proving that they lacked the requisite knowledge of the person who caused the alleged injury within the statutory period.[22] *Fragoso v. Lopez*, 991 F.2d 878, 887 (1st Cir. 1993); *Kaiser v. Armstrong World Industries, Inc.*, 872 F.2d at 516. And again, *In Re Ford Motor Co. Bronco II Product Liability Litigation*, a principle which is squarely applicable to the case at hand, the Court stated:

prescription does not commence until the date the injured party discovers or should have discovered the facts upon which his cause of action is based. The principle does not apply if plaintiff's ignorance is attributable to his own willfulness or neglect. In determining when the plaintiff should have known of the basis for his claim, the focus is on the reasonableness of the plaintiff's action or inaction. A plaintiff will be deemed to know that which he could have learned through reasonable diligence. As one court succinctly stated, if an opportunity is afforded to a party to know and to learn about a certain matter bearing on his interest and he fails or refuses to profit by it, if he closes his eyes to the notice spread before him and shuts his ears to oral information directly imparted to him, the law will hold him as bound by the same, and as fully notified as if he had taken thorough personal cognizance at the time of the information imparted and of the notice given.

982 F.Supp. at 395–96. Accordingly, the Court rejects Plaintiffs' contention that their causes of action were not reasonably known to them, nor could they be reasonably ascertained. The Court harbors no doubt that Plaintiffs lacked the required amount of diligence, and as such, the liberal considerations of the civil law doctrine of prescription vanish and become inapplicable, or unavailable. *See Vega*, 135 P.R.Dec. at 755. As in *Rabassa*, 204 F.Supp.2d at 304, this Court agrees with the Magistrate–Judge's conclusion that plaintiffs have failed to make such a showing. Plaintiffs failed to carry their burden, of establishing that (1) they did not have notice of the injury or knowledge of the person who caused the injury; (2) that the

---

**20.** See Docket No. 76, at p. 14.

**21.** Docket No, 76, at p. 14.

**22.** Refer to *Rabassa*, 204 F.Supp.2d at 304, for this proposition.

reason for their lack of knowledge was not due to negligence or lack of care to acquire the necessary facts. See also, *Vazquez Morales*, 967 F.Supp. at 46. Having Plaintiffs failed to meet this burden, the statute of limitations started to run from the day of the injury. Thus, the Court finds that Plaintiffs' claims are time barred, pursuant to Article 1868 of Puerto Rico's Civil Code.[23]

## V. CONCLUSION

Considering the widespread attention that the "rollover" propensity in SUV's and the Ford Model Explorer, has received, and the abundance of information publicly available in regards to said matter, prior to and during the year of Carlos Bado's accident, Plaintiffs had an affirmative responsibility of exercising due diligence and reasonable care, to discover, prior to the expiration of the statute of limitations, that they had a possible claim against the Defendant Ford Motor Company. Although the Court analyzed the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the Plaintiffs, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105, 110, the Court finds that the complaint was filed after the expiration of the statute of limitations, occurring because of Plaintiffs' "lack of diligence". *Vega v. J. Perez & Cia., Inc.*, 135 P.R.Dec. at 755; *Lopez v. Autoridad de Carreteras*, 133 P.R.Dec. at 256.

Wherefore, after a thorough review of the record, it is clear to the Court that there are no genuine issue of material facts, and as the instant product liability claims for damages are time-barred, the Defendant is entitled to judgment as a matter of law. Defendant's Motion for Partial Summary Judgment (Docket No. 63), is hereby **GRANTED**, and this case, i.e., claims of all legal aged Plaintiffs, is **DISMISSED WITH PREJUDICE.** The Court thus **adopts** Magistrate Judge Aida Delgado Colon's Report and Recommendation, and dismisses the complaint against Ford Motor Company, as to all legal aged Plaintiffs.

Having dismissed the claims of all legal-aged Plaintiffs with prejudice, Defendant's Motion to Strike (Exhibits 32–42 of Plaintiffs' Memorandum in Opposition), (Docket No. 66), is hereby denied, as MOOT. For the same reason, Defendant's Motion to Strike Plaintiffs' Opposition to Motion to Strike (Docket No. 74), is hereby also denied, as MOOT. The Court hereby NOTES Defendant's Supplement Motion for Partial Summary Judgment, for the purpose of informing the Court of Appeal's judgment in the case of *Rabassa Suarez v. Ford Motor Company*, dated February 12, 2003. (Docket No. 75).

**IT IS SO ORDERED.**

---

23. *See* 31 P.R. Laws Ann., § 5298.